CINCINNATI SO. RY. (TR.) v. JAMES J. HOOKER ET AL.

EQUITY MAY AWARD DAMAGES IN LIEU OF SPECIFIC PERFORMANCE—MEASURE OF DAMAGES IS ACTUAL LOSS.

Damages, alone, may be awarded by a court of equity in a proper case, in lieu of specific performance, in order to do full justice between the parties and to confer complete relief in one judicial proceeding. Such damages will be limited to saving the parties from loss, but will not include speculative or accidental profits.

**J. R. Sayler,** for plaintiff.

**Miller Outcalt** and **O. P. Cobb,** for H. J. Reedy Co.

**J. C. Healy** and **F. J. Darger,** for Mrs. Spieker.

JELKE, J.

Although the proof is conflicting and plaintiff's case is hardly made by that clear and satisfying measure of proof usually required to move a court of chancery to put forth its decree, we have nevertheless on examination found on the evidence that a contract was entered into between Maria T. Spieker and Walter Kamman, of which contract the H. J. Reedy Company was to have the benefit not by way of transfer or assignment, but through Maria T. Spieker's agreement that Walter Kamman might sublet the premises to the H. J. Reedy Company.

Maria T. Spieker was cognizant of the fact that it was by virtue of this contract, so made with Kamman, and in reliance upon the same that the H. J. Reedy Company at considerable expense moved into the premises and expended money and did the things provided for in said contract.

The lapse of time does not seem to us of sufficient importance to be made the basis of a rescission of the contract by the counsel of Mrs. Spieker, if there was a contract of lease.

While neither party was particularly diligent in executing the written contract, the H. J. Reedy Company does not appear to have been especially derelict or blameworthy. Both parties seem to have been sparring for trifling advantages in the final execution of the lease and on the subject of delay honors are even.

Mrs. Spieker lost nothing by the delay. She would be in no worse condition if the execution of the lease were decreed to-day, or if it had

Railway v. Hooker.

been actually executed in February, or December, than if it had been executed on November 17 or on any day between the beginning of negotiations by Mr. Kamman and the final breaking off of the deal by Mr. Dorger.

We feel that a contract was so far entered into and was acted upon to such an extent by the H. J. Reedy Company as to make a court of chancery consider what relief, if any, in equity and good conscience, can be afforded:

The testimony of Walter Kamman that he had no further interest in the lease and that he did not care anything about the H. J. Reedy Company was probably true but must not be given too broad a significance. He probably no longer had any personal beneficial interest in the lease, but he had so acted and had permitted the H. J. Reedy Company to act to such an extent all to the knowledge of Mrs. Spieker as to make it inequitable for him to slip out or for Mrs. Spieker to let him go freed from the duty of acting as a *"tertium quid"* trustee, or agent, or in a capacity necessary to secure and preserve the rights which had accrued and were dependent upon him.

"That a court of equity has the power, in a proper case, to do full justice and confer complete relief in one judicial proceeding, by giving damages in connection with some other kind of relief, and, *even alone,* is a familiar doctrine." See "Damages given in place of Specific Performance," Section V, Pomeroy, Contracts Sec. 469, p. 533; (ed. of 1897) Secs. 474 to 481, inclusive.

In the case at bar, we think both sides have made too much importance of the intervention of the trustees of the Cincinnati Southern Railroad Company by their suit in condemnation.

The coming along of this third and new interest was entirely without the procurement of either party and was not caused by the delay in executing the written lease. We are not bound to assume that said trustees have agreed to pay a large price, a price exceeding the value of the property, at the time the lease was agreed upon. In proper theory the purchase by condemnation of the property by the trustees of the Cincinnati Southern Railroad Company and the price paid should work a detriment to nobody, or to no interest in the property, but should make everybody whole. Whatever of profit or advantage there may be in it, should be shared somewhat by all parties affected.

On the other hand, the concern of a court of chancery in a case like this is to save parties from harm or loss and the court is not interested in securing any part of a speculative or accidental profit to anybody.

As a court of chancery always strives to conserve all interests which its decree may touch, and inasmuch as the proof requiring specific performance is not coercively strong, and since a lease executed under a decree for specific performance could endure but for a short time and would be immediately subject to the right of eminent domain of the Cincinnati Southern Railroad Company, the court in its effort to do complete justice is moved, in place of specific performance, to award to the H. J. Reedy Company such compensation as will make it whole and in view of all the circumstances will work no hardship to Mrs. Spieker.

We are therefore of the opinion that the H. J. Reedy Company should receive the sum of $2,500 out of the sum agreed to be paid by the trustees of Cincinnati Southern Railroad Company, and that when said sum of $2,500 is so paid, the prayer for specific performance should be denied. In order to carry out this conclusion, the court says that if Mrs. Spieker refuses to pay said sum of $2,500, the prayer for specific performance will be granted; if Mrs. Spieker tender the $2,500 and it be not accepted by the H. J. Reedy Company the prayer for specific performance will be denied. If the $2,500 is paid and accepted and the controversy thus concluded, the costs will be divided.

**Giffen** and **Swing, JJ.,** concur.